J. SAM WATTS, Appellant, v. LEVEE DISTRICT NO. 1, MISSISSIPPI COUNTY, MISSOURI, Respondent.

**St. Louis Court of Appeals.    Argued and Submitted February 8, 1912.    Opinion Filed March 5, 1912.**

1. **ESTOPPEL: Ratification: Difference.** An estoppel is a legal consequence — a right — arising from acts or conduct; while acquiescence and ratification are but facts presupposing a situation incomplete in its legal aspect, i. e., not as yet attended with full legal consequences.

2. **LEVEE DISTRICTS: Status.** A levee district is a public corporation, and its directors are quasi public officers.

3. ————: **Estoppel.** Whether an estoppel can be invoked against a levee district, arising from acts of its officers, is a serious question; and, in any event, an estoppel should not be adjudged except on clear and unmistakable proof of acts done by the officers within the line of their powers and duties.

4. ————: **Powers of Directors.** The directors of a levee district have no power to impose an obligation on the district, unless first authorized to do so by a vote of the landowners of the district.

5. ————: **Payment for Unauthorized Services.** The spirit of our law, as gathered from section 48, article 4 of the Constitution, is against the allowance or payment for public work, or services or labor of any kind performed for a public corporation, such as a levee district, which is done in the first instance without authority of law.

6. **EVIDENCE: Corporations: Admissibility of Parol Evidence to Prove Corporate Acts: Levee Districts.** Parol evidence of corporate acts is admissible, as in the case of natural persons, and while the records are generally conclusive of what actually took place, this is not so when the record is incomplete on its face or when fraud, or the like, appears; and hence, where

the minutes of a meeting of the landowners of a levee district contained an entry that one of the directors explained the object and purpose of the meeting, but did not set forth what he stated, parol evidence was admissible to show the nature of the explanation.

7. **LEVEE DISTRICTS: Unauthorized Warrants: Ratification.** In an action on warrants issued by a levee district to pay for a levee, the proceedings for the construction of which had been held invalid by the Supreme Court because authorized at a meeting of a part only of the landowners of the district, evidence *held* not to show a ratification of the issuance of such warrants by the authorization, at a subsequent meeting of the landowners of the entire district, of the construction of a new levee and the repair of the one in question.

8. ———: ———: **Payment from Subsequent Levy.** Warrants drawn in payment for unauthorized work performed in constructing a levee cannot be paid out of funds realized from a tax levy subsequently made to pay for the construction of a new levee and the repair of the old one.

9. ———: ———: **Liability of District: Effect of Prior Decision: Appellate Practice.** A decision by the Supreme Court, in a suit by a county collector to enforce a levee assessment, that the assessment was invalid because the levee was not authorized at a meeting of the landowners of the entire district and the cost thereof assessed against all the land in the district, conclusively establishes that the holder of warrants issued to the contractors, for the payment of which the assessment adjudged to be invalid was made, may not recover against the levee district, in an action on such warrants.

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*Russell & Deal* for appellants.

(1) The powers of a public corporation are those granted in express words by its charter or the general statutes under which it is incorporated; the powers necessarily or fairly implied in or incident to the powers thus expressly granted; and the powers essential to the declared purposes of the corporation, not only

convenient but indispensable. 1 Beach on Public Corporations, sec. 538; 1 Dillon on Municipal Corporations (4 Ed.), sec. 89; 1 Tiedeman on Municipal Corporations, sec. 110. The power granted in express words by the general statutes under which respondent is incorporated is to build levees to protect the lands of the district from overflow or inundation from rivers along its borders. The power necessarily implied in or incident to the powers expressly granted. is to issue warrants in payment of levee constructed. R. S. 1889, chap. 101. Subsequent acts of the Legislature authorized the issuing of warrants and prescribed their form. R. S. 1899, chap. 125, Sec. 8446. (2) A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the scope of the corporate powers but not otherwise. Ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals. 1 Dillon on Mun. Corp. (4 Ed.), p. 463; 1 Tiedeman on Mun. Corp., sec. 170; 1 Beach on Public Corp., secs. 248, 249. The most that can be said against the warrants is that they were not properly authorized, and that is questionable. All that the Supreme Court did say in the Wall case was "that the meeting of November 28, 1893, which essayed to authorize the construction of the levee and the assessment to pay for it, was itself without authority and all its acts invalid." Without authority—not properly authorized. Invalid —of no binding force. There is a vast difference, a marked distinction, between the two cases, and the mere dictum of VALLIANT, J., in saying that all of the acts of the meeting of November 28, 1893, were "without authority and invalid" is no authority whatever in this case. The only question before the court in the Wall case was the validity of the assessment, and when it was shown that the assessor had not assessed

all of the land in the district, that was sufficient. So, that, it was not really necessary for the court to even pass upon the validity of the meeting of November 28, 1893. (3) If there ever was a case where the doctrine of estoppel should be applied with all of its force this is certainly that case. Two hundred and four out of 247 of the landowners in this corporation in a legally assembled meeting by their vote solemnly declaring to rebuild, strengthen and repair the seventeen miles of levee built with the labor and money of appellant and others, ought to, forever, estop respondent from questioning the validity of a contract which has been wholly executed on the part of the holders of these warrants. Moore v. New York, 73 N. Y. 238; State Board v. Railroad, 47 Ind. 407; Angell & Ames on Corp. (9 Ed.), 240, note a; Railroad v. Howard, 7 Wall 392; Argenti v. San Francisco, 16 Cal. 255; Wood v. Kansas City, 162 Mo. 321; Pinertal v. San Francisco, 21 Cal. 351.

*Boone & Lee* and *W. H. & J. G. Miller* for respondent.

(1) The entire contention of plaintiff is based upon a subsequent ratification by the action of the Crosno meeting of landowners, and the subsequent use, by the district, of the levee built under and in pursuance of the void and illegal action of the Bird's Mill meeting, held seven years prior. Ratification•is estoppel, and no question of estoppel can arise when the proceedings are void. 25 Am. and Eng. Ency. Law, p. 576; State ex rel. v. Murphy, 134 Mo. 567. (2) Levee districts in Missouri are political subdivisions of the state, and exercise the prescribed functions of government in the district. Morrison v. Morey, 146 Mo. 543. How can, if at all, a municipal corporation ratify a void act? A ratification must be unequivocal, and with the same degree of solemnity

that would be required to make the original contract.
Kolmeyer v. Jefferson City, 75 Mo. App. 678; Mc-
Quiddy v. Branock, 70 Mo. App. 535; Neil v. Gates,
152 Mo. 585; Clay v. Mexico, 92 Mo. App. 611; Sav-
age v. Springfield, 83 Mo. 323; Gibson v. Zimmerman,
27 Mo. App. 100; Shell City v. Rumsey, 39 Mo. App.
264; Mister v. Kansas City, 18 Mo. App. 217; Union-
ville v. Martin, 95 Mo. App. 28; Durango v. Penning-
ton, 8 Colo. 257; Nashville v. Hagan, 68 Tenn. 493.
(3) A void contract cannot be ratified, and persons
dealing with a municipality do so at their peril. If the
agent acts contrary to law, the act, so far as it con-
cerns the corporation, is void. 4 Wait's Actions and
Defenses, p. 603; Sturgeon v. Hampton, 88 Mo. 213;
Hermon on Estoppel, pp. 540, 541; Clay v. Mexico, 92
Mo. App. 611.

STATEMENT.—This is an action to enforce pay-
ment of sixteen warrants in the following form:
"OFFICE OF LEVEE DISTRICT NUMBER ONE.
Charleston, Mo.
To the Treasurer of Mississippi County.

Pay out of any money in the treasury belonging
to said Levee District, to A. C. Harris————dollars,
with interest thereon at the rate of eight per cent per
annum, from date of presentation to you for payment
until sufficient funds of said district are in the treas-
ury to pay the same.

Done by order of the Board of Directors this
————day of————, 189—.

W. T. MARSHALL,                    THOMAS BECKWITH,
    Secretary.                          President."

The first of the warrants bears date of issue De-
cember 15, 1894, the last March 2, 1895. They run in
amount from six dollars and seventy cents, the small-
est, to one hundred dollars, the largest. They were
all protested on presentation to the treasurer of the

county for payment, on the ground that there was no money on hand belonging to defendant, the protests being dated from December 17, 1894, to March 4, 1895. They aggregate $743.37, principal, and were all assigned by Harris to plaintiff, who demands judgment on each of them.

The answer, after a general denial, set up the notices and proceedings connected with the issue of these warrants, it being admitted that they were all issued in pursuance of a resolution passed at a meeting of part of the landowners in Levee District No. 1, held at Bird's Mill, November 28, 1893. It was further set up in the answer that these warrants were all issued without authority of law and without authority of defendant, and in pretended payment of certain work not authorized by this defendant; that they were issued under pretended authority of the above named meeting, all the proceedings of which meeting, it is averred, were adjudged illegal and void by the Supreme Court of this state in the case of State ex rel. F. M. Stotts v. Alice and B. J. Wall, a suit brought to collect the tax authorized by that meeting for the payment of the warrants in suit and others of like character, the case referred to being reported 153 Mo. 216, 54 S. W. 465, decided December 22, 1899. Wherefore defendant charges that these instruments are void and constitute no charge against defendant.

The reply, or replication, as it is incorrectly called, after denying all the allegations in the answer, sets out the proceedings leading up to the organization of the levee district, which were had on August 6, 1892, and avers that in pursuance of apparent authority given to them by the landowners of the district prior to May 17, 1900, the board of directors had constructed about seventeen miles of levee and issued warrants aggregating $62,115, in payment for that work, these warrants including those sued on, and had caused a tax to be levied upon the lands in the district for the

purpose of paying the warrants, and had paid, after the issue of the warrants, about $40,000 thereof. It is further set up in the reply that on December 8, 1899, after the decision in the Stotts-Wall case, above referred to, by the Supreme Court, and with full knowledge of the contents of that decision, the board of directors of the levee district had met and, as provided by law, determined and ordered that the levee should be built around and along the river front of the levee district from the New Madrid county line in the Mississippi river northward along the river to the north end of the levee district extending along the north end of Big Lake to the "Still House," including the seventeen miles of levee theretofore built, and for the payment of which the warrants sued on were issued; that at that meeting the board had ordered "that accurate surveys, maps and profiles of said levee to be constructed, and repairs to be made," be furnished and that estimates and calculations of the cost of that work be made showing the amount, character and kind of work to be done, the exact location and probable cost thereof, and appointed a competent civil engineer to do the work; that afterwards, on May 7, 1900, the board of directors of the levee district met and by resolution ordered the assessment of a tax on all lands within the levee district to be benefited, "for the purpose of defraying the expenses of surveys, and estimates of levees or other work and thé cost thereof, maintain the same and pay such officers, agents, servants and employees as are allowed compensation by law," the board also ordering that a certified copy of the resolution be transmitted to the clerk of the county court of the county; that in accordance with this resolution the tax so levied was extended on the tax books of the county on the real estate to be benefited by the proposed work, and had been so extended and collected from year to year as other taxes; that the county assessor filed the assessment books of the district with

the clerk of the county court and a copy thereof with the president of the board of directors of the district; that the civil engineer filed his report and estimates with the board of directors' of the district; that afterwards, the board of directors called a meeting of the landowners in the district, to be held June 21, 1900, at a place designated on the line of the proposed levee work, and caused notice of the meeting to be published and posted as required by law; that pursuant to that resolution and notice a meeting of the landowners in the district was held at the place and on the date designated, at which meeting the report, specifications, surveys, maps, profiles and estimates as made by the engineer, "which included the seventeen miles of levee theretofore built for the payment of which the warrants herein sued on were issued, was submitted, together with the assessment as returned by the county assessor to the meeting of said landowners for their ratification or rejection, and that at said meeting it was then and there determined by a majority of the landowners of the district present to do the work according to the report, specifications, surveys and profiles submitted by the engineer of said district." It is further averred that since that meeting of July 21, 1900, the board of directors of the district has expended large sums of money in building levee and repairing and strengthening the seventeen miles of levee which had been built "and is exercising ownership and control of all levee built and paid for with the warrants herein sued on." It is further averred in the reply that all the acts and proceedings of the board of directors and landowners of the district were done and had with full knowledge that a large amount of levee had been constructed and that warrants issued in payment for this work were outstanding and unpaid; that all work for which the warrants had been issued was done in good faith by the several contractors and the warrants were issued by the board of directors

and received by the contractors in good faith, and that the defendant district has received and is yet receiving great benefits from the work for the payment of which the warrants were issued, wherefore it is averred that by reason of the premises the defendant levee district has fully ratified and confirmed the action of the board of directors in issuing the warrants and is now estopped by reason of the premises aforesaid to deny the validity of the warrants.

The trial was before the court, a jury having been waived. It was admitted that the district was legally organized; that the warrants sued on were issued by order of the board of directors of the defendant district and were signed by the proper officers of the district; that plaintiff is the owner of the warrants; that they were due (had matured) and were unpaid at the time the suit was filed; that they were issued in part payment of work and labor performed in the construction of about seventeen miles of levee, as alleged in the reply; that they were all presented to the county treasurer of the county and protested by him on the several dates mentioned. One of the warrants for one hundred dollars was introduced as a sample of all the warrants save as to the amount, date, number and date of protest. These facts were agreed to as constituting plaintiff's evidence in chief.

It was also agreed that all these warrants were issued in pursuance of a resolution passed at a meeting of part of the landowners in District No. 1, held Nov. 28, 1893. The petition in the case of State ex rel. Stotts, Collector v. Wall et al., above referred to, was in evidence and it was admitted that that suit was for taxes levied by the board of directors of the levee district for the purpose of paying the warrants in suit, and other warrants of like character, all issued in pursuance of the meeting of landowners held November 28, 1893. The judgment of the Mississippi County Circuit Court in the Stotts-Wall case, in favor of plaintiff,

the affidavit for appeal in that case and the opinion of the Supreme Court were in evidence, these all being offered and admitted subject to plaintiff's objection that he was not a party to that suit; that it was a suit to recover taxes and not on any warrant by the levee district. Defendant also introduced the notice to the landowners in the levee district, of date October 27, 1893, by which it appeared that the district specified was less than the whole levee district. It also introduced the proceedings of the board at the landowners' meeting of November 28, 1893.

In rebuttal plaintiff introduced all the records of the meetings of the board and the landowners in the district, had prior to 1899, connected with the building of the seventeen miles of levee. Plaintiff also introduced the record of the meetings of the board of directors, commencing with the meeting of December 8, 1899, at which latter meeting a resolution was adopted that "a levee shall be built around and along the river front of said levee district from the New Madrid county line in the Mississippi river northward along the north bank of Big Lake to the Still House; and it is further ordered and determined that the levee heretofore built shall be strengthened, that such levee and such repairs are necessary to protect the district from inundation and overflow from rivers, and it is determined by the board that for the protection of said levee district from overflow and inundation from rivers it is necessary to construct a levee and strengthen and repair the old levee as above set forth." The resolution further ordered that accurate surveys, maps and profiles "of said levee to be constructed and repairs to be made" be furnished and that estimates and calculations of the cost of the work, showing the amount and character of the work to be done and its exact location and probable cost, be made, and it was ordered that an engineer named should be employed to do the work. An order of the levee board, of date May 12, 1900, was also in

evidence, reciting that the board had determined, "that by the levee and work now proposed to be done," all the lands in the district would be benefited, and the board resolved, "that in order to defray the expenses of surveys, estimates of levee to be built and cost thereof, and to pay the officers, agents, servants and employees of said levee district," that an assessment of a tax on all the lands in the boundaries of the district shall be levied and extended on the assessor's book, specifying the rate. The plans, specifications, etc., and estimates of the engineer in evidence, it is stated, show that the engineer "included in his work all of the levee constructed by means of the warrants sued on, and other outstanding warrants." A copy of the assessment books made by the assessor having been returned by the clerk of the county court, the board ordered a meeting of the landowners in the district to be called, to be held on July 21, 1900, at a point in the district named, notice of the time, place and object of the meeting being ordered to be published. The notice to all the landowners in the district set out that on Saturday, July 21, 1900, a meeting would be held for the purpose of submitting for action thereon, the reports, specifications, surveys, maps, profiles and estimates, made by the engineers, and assessments returned by the assessor, the landowners being notified to appear and show cause, if any they had, why the land should not be assessed for such an amount "as would be necessary to pay for the work," and that a vote would be taken whether the proposed work should be done in the district. Following this is the record showing the proceedings of the meeting of the landowners in the levee district. It appears by this that at that meeting a chairman and secretary were selected, the publication of notice of the meeting made, noted as filed, and it is set out that "the object and purpose of the meeting were explained to the land-

164 App.—18

owners present by F. J. Hess on behalf of the board
of directors, who asked specific instructions from the
meeting.'' Following this is the entry that the board
of directors being present, submitted the reports, the
assessments and profiles, all of which were laid before
the meeting, the estimates showing that the probable
cost of the levee would be $262,784, and giving the esti-
mate of the necessary assessment, it was stated that
the question before the meeting was, ''whether said
levee should be built and the said forty per centum
be assessed against said lands to build said levee.''
The record then sets out the appointment of tellers,
the number of votes in favor being 204, those against
forty-three. Whereupon the chairman announced that
the proposition carried ''and the meeting determined
to build said levee.'' It is further set out in these min-
utes of this meeting that the original copy of the
proofs of publication and affidavit of posting notices
and original record of the names of voters voting,
showing the vote of each, was attached to the proceed-
ings, and the proceedings ordered filed with the secre-
tary of the board of directors. This is all that ap-
pears in this record of the proceedings of the meeting.
Following this, under date of August 24, 1900, and
down to February 7, 1903, are records showing the
proceedings of the board in carrying out the plan, and
assessments from year to year under the resolution of
July 21, 1900. No record entry, however, of any kind
appears with reference to the payment of the warrants
issued for the first levee, nor is there any record
in the minutes of the board in evidence showing any
action on these old warrants or any reference to pay-
ment for the work previously done on the seventeen
miles of old levee.

F. J. Hess, called as a witness on behalf of plain-
tiff, testified that he is the present secretary of the
levee board and is acquainted with the first levee
built by the district, which began on the Clarkson

property on Big Lake, known as the "Still House," and extends east and south to Bird's Point; that very little of it was built. below Bird's Point prior to the decision of the Supreme Court in Stotts v. Wall, supra, none of it being built by the levee board below Bird's Point before 1899. The acts of ownership exercised by the levee district over the first seventeen miles of the levee, built prior to 1899, consisted in the appointment of inspectors to look after and preserve the levee; that it is exercising the same control and acts of own-ership over that part of it that it is over the remain-der. The plans and estimates submitted to the land-owners at the meeting of July 21, 1900, showed the location of the levee and it was then and there deter-mined to build the levee in accordance with the plans and specifications submitted there that day.

W. T. Marshall, examined as a witness on the part of plaintiff, testified that he was a member of the first board of directors of the levee board and acted in that capacity for four or five years; knew the seventeen mile stretch of levee first built. The warrants issued in payment for that work were issued in good faith to, and received by, the contractors who constructed that work. It had been a great deal of benefit to the north end of the district, keeping the overflow from the Miss-issippi river entirely off that end of the district and largely reducing the water in other portions of the dis-trict. He testified that it was hard to estimate the ben-efit to the district accruing from this levee; had saved several crops; it was the logical place to commence the construction of the levee and it was continued from there on down .the river. On cross-examination Mr. Marshall testified that this original seventeen miles of levee from the "Still House" was built in pursuance of the resolution adopted at the meeting held by the land-owners of a part of the district in November, 1893. That was the only meeting any of the landowners of the district held prior to that of 1900. Witness was

present at the meeting held November 28, 1893, at Bird's Mill, and testified that the only persons who voted at that meeting were those embraced in the territory described in the notice of that meeting.

Mr. Hess, recalled by defendant, testified that he was at the meeting of the landowners held July 21, 1911; it was held at Crosno. Witness being asked to state if anything was said to the several landowners with reference to the payment or levying of taxes for the payment of outstanding warrants to build the old levee, that is the levee built under the order or resolution of the Bird's Mill meeting, held in November, 1903, the question was objected to by counsel for plaintiff on the ground that the record of the meeting ''speaks for itself;'' that it was a meeting provided for by law and the record of the proceedings was kept. The objection was overruled, plaintiff excepting, and witness answered that there was. Asked to state what was the understanding had at that meeting with reference to payment of these warrants, witness stated that when they met there, Mr. Huff, one of the directors, called Mr. Barry and witness, the three of them being the directors, off to one side. There was opposition to the proposition, several landowners making considerable fight against it. Mr. Huff called the other two directors to one side and told them the condition of affairs; said he ''had been canvassing the condition and if we didn't do something the proposition would be lost.'' Whereupon all three of the directors agreed that they would not pay these old warrants; they did not consider them legal obligations against the district and would not pay them, and he (Huff) assured the landowners present that he would resign before he would have anything to do with them. Witness Hess explained the object of the meeting at the request of the president of the board, and some one of the landowners in the meeting made him state what the levee board promised the people; that they

did not consider these warrants legal obligations and could not and would not pay them. This was all objected to by plaintiff's counsel for the reason before stated. On cross-examination Mr. Hess testified that the proposition submitted to the landowners' meeting of July 21, 1900, was whether or not they would determine to do the work in accordance with the plans, specifications, estimates and profiles as submitted there that day, those being the ones prepared by the engineer appointed by the board. That proposition carried. All three of the members of the board of directors were present and Mr. Huff called them together and said if they "didn't let the people know something definite" about what they were going to do about paying the warrants. "that the proposition would be voted down." Witness himself told Mr. Huff that he (witness) represented a good many proxies and would vote against the proposition if the money was used to pay for that work; that the attorney of the board had advised the board, and the members of the board told the people at the meeting, that the warrants were void; to consider them void, and that the board obligated themselves as men that they would have nothing to do with them, and that is the reason the board of directors now refuse to pay the warrants. Witness further testified that of course the levee district "is now getting the benefit of such work as is there now and will continue to do so if they put out a whole lot of money on repairs;" that a lot of money is needed. No resolution was passed that day that witness knew of that they would not pay the warrants.

Mr. Huff, called as a witness for defendants, stated that he was a member of the board and present at the meeting at Crosno. There was an announcement made to the landowners assembled there, before they voted to build the levee, concerning the outstanding warrants which had been issued for the payment of the old levee, built in pursuance of the resolution

adopted at the Bird's Mill meeting in 1893. A number
of the landowners present came to witness and asked
him what the board was going to do if the landowners
voted that one hundred thousand dollars, and if the
board would use it in paying off the old indebtedness.
Witness told them that he was not in favor of it; that
he had paid his own taxes and "did not feel like paying
somebody's else's taxes." These people said that if
these warrants were to be paid, they would vote the
proposition down and they wanted an understanding
about that, whereupon witness talked to Messrs. Hess
and Barry, the other members and they agreed to
what the board would do. Mr. Hess made a state-
ment to the meeting of the conclusion arrived at by the
board. A number of the landowners present made it
understood that if there was to be a payment of the
old warrants issued on the authority of the Bird's
Mill meeting, they would not vote for this proposed
levy. This was all objected to by counsel for plaintiff
for the reasons before stated, the objection overruled
and exception saved. Witness identified a map of the
county showing the levee district. He stated that a
part of the levee was built in 1856 and only repaired
by the levee board; some parts of it were never
touched. On cross-examination witness stated that it
was his understanding that the objections to the pay-
ment of the warrants came almost entirely from the
people in the south end of the district, who opposed
all the money being used in the upper end of the dis-
trict.

Mr. Ashby, sheriff of the county in 1900, and a
landowner in the levee district, testified that he at-
tended the meeting of the landowners held in 1900 for
the purpose of building a levee. Mr. Hess announced
to the meeting that he did not think the warrants
issued in 1893 and 1894 were valid and that the board
would not pay them—something to that effect. Sev-
eral of the landowners present were making quite a

fight against the proposition. They talked the matter over and Mr. Hess then made the announcement that so far as the board was concerned they did not consider the warrants valid. On cross-examination witness stated that the objections came from the north as well as the lower end of the county. They objected to paying the taxes when the levee was built, and people from the lower end of the county objected because they wanted the money expended for a new levee. The announcement was made by Mr. Hess in order to carry the proposition as submitted in the notice.

Mr. Marshall, recalled on behalf of plaintiff, testified that he was chairman of the landowners' meeting held at Crosno and had never heard of any public announcement being made, that the outstanding warrants would not be paid; as chairman would have known if any motion of, or if any action had been taken at that meeting on it, and the secretary would have recorded it. The record shows everything that was done there; heard nothing of any direct ratification of the old warrants and heard nothing said about them.

Mr. Ashby, recalled, testified that he did not mean to state that the payment or non-payment of the old warrants was discussed at the landowners' meeting at Crosno after the meeting was organized; it was discussed by those at the meeting but before it was called to order. To the best of witness's recollection Mr. Hess made the statement before the meeting was called to order but made it in a public way. After the meeting was convened and in order, witness did not hear anything said about the payment or non-payment of the warrants; what was said was before that and they thought the proposition would be defeated. On cross-examination witness testified that he remembered a Mr. Campbell calling to Mr. Hess and asking him what he was going to do about the old warrants; that was before the meeting was called to order and it was when Mr. Hess stated the object of the meeting.

At the conclusion of the testimony in the case plaintiff asked an instruction to the effect that although the court, sitting as a jury, might believe and find from the evidence that the warrants sued on were issued by the board of directors of the defendant district pursuant to the proceedings of the landowners at the Bird's Mill meeting of November, 1893, and that the notice of that meeting was defective or insufficient in law, still if the court sitting as a jury, believed and found from the evidence that the warrants were issued after that meeting in payment of work performed in the construction of a levee to protect the land in the district from overflow and that afterwards the county court caused all the land in the district subject to overflow and to be benefited to be assessed as required by law, and that the board of directors of the district levied a tax on all such land to defray the expenses of surveys, estimates for levees or other work and costs thereof, and ordered surveys, maps and profiles made and employed an engineer for that purpose and ordered a levee built around and along the district from the New Madrid county line northward along the river to the north end of the levee district and extending along the north bank of Big Lake to the "Still House," and ordered that the levee heretofore built be strengthened and repaired, and called a meeting of the landowners of the defendant district and gave proper notice thereof, and that at that meeting the landowners of the district present or represented, after the reports, etc., made by the engineer together with the assessments as returned by the county assessor, had been submitted to them determined by a majority vote to build the levee according to the report, surveys, estimates, etc., "then in that event such proceedings by the board of directors and the landowners at said meeting was a ratification of the acts of the board of directors in issuing the warrants sued on and the verdict must be for the plaintiff on each count of the petition,

except on those counts where the warrants were more than ten years old before suit was filed.'' The court refused this instruction, plaintiff excepting, and judgment followed in favor of defendant on all counts in the petition. Filing a motion for new trial and excepting to that being overruled, plaintiff duly perfected appeal to the Supreme Court. The case pending in the Supreme Court, that tribunal ordered its transfer to this court, it appearing that the amount in controversy was not within the jurisdiction of the Supreme Court, and that court having determined in Wilson v. King's Lake Drainage & Levee District, 237 Mo. 39, 139 S. W. 136, the opinion in the cause handed down July 15, 1911, that a drainage district is not a political subdivision of the state within section 12, article 6, of the Constitution, there was no question in the case within the jurisdiction of the Supreme Court.

REYNOLDS, P. J. (after stating the facts).—The facts connected with the issue of these warrants are so fully set forth in the opinion by Judge VALLIANT in State ex rel. Stotts v. Wall, supra, that it is unnecessary to go into them.

Before considering whether these warrants are void, let us see if there are here present such acts of ratification or acquiescence by the corporation as raise an estoppel, conceding for the argument, but not conceding it as a fact, that the proceedings under which the warrants, of which the ones in suit are a part, were issued, were merely invalid and not void. ''An estoppel is a legal consequence—a right—arising from acts or conduct; while acquiescence and ratification are but facts presupposing a situation incomplete in its legal aspect, i. e., not as yet attended with full legal consequences.'' [Bigelow on Estoppel (5 Ed.), p. 457.] Let us consider whether there has been an express ratification.

Whether an estoppel can be invoked as against this levee district, arising from the acts of its officers, is a very serious question. The directors of this district are public officers and the district itself a public corporation; although, as held by the Supreme Court in Wilson v. King's Lake Drainage & Levee District, supra, and cases there cited, the levee districts are not political subdivisions of the state but public, governmental agencies and in no sense private corporations. Certainly no estoppel should be adjudged against them but on clear and unmistakable proof of acts of ratification and acquiescence, done within the line of their powers and duties. The directors of these levee districts have no power to impose any obligations on the district unless first authorized to do so by vote of the landowners of the district. They are quasi public officers, officers of "a public governmental corporation." Our Constitution, section 48, article 4, provides that the General Assembly itself, the supreme lawmaking power of the state, shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation to a public officer, agent, servant or contractor, "after service has been rendered or a contract has been entered into and performed in whole or in part, nor pay, nor authorize the payment of any claim hereafter credited against the state or any county or municipality of the state under any agreement or contract made without express authority of law and all such unauthorized agreements or contracts shall be null and void." While this constitutional prohibition does not literally cover the class of officers or public agencies to which these drainage districts belong, it would seem that its spirit should cover them, and that spirit is against the allowance or payment for public work, services or labor of any kind done in the first instance without authority of law, as was the case here.

Watts v. Levee District.

There is very positive evidence that at the Crosno meeting, that is, the meeting held in July, 1900, certainly immediately prior to that meeting being called to order, or at least in the act of calling it to order, the members of the board of directors becoming anxious about a favorable vote, distinctly gave notice, through Mr. Hess, one of their number, that the contemplated action on voting for the levee along the whole line of the county and including the whole district, was not to be considered as ratifying the warrants which had previously been issued for the seventeen-mile part of the levee in the north end of the county and that none of the money authorized to be raised by the action of this meeting was to be applied in payment of those warrants. It is true that no minute was made in the records of this meeting of what Mr. Hess then said, but the record of that meeting contains this entry: "The object and purpose of the meeting were explained to the landowners present by F. J. Hess on behalf of the board of directors, who asked specific instructions from the meeting." What Mr. Hess then said is not recorded; it is not usual to do that; but he and others have testified to what he said, as we have seen. This testimony, so far from contradicting, supported what the minutes affirmatively show. Moreover, it has been determined in many cases that parol evidence of corporate acts is admissible, as in the case of natural persons, and while the records are generally conclusive of what actually took place, this rule does not apply when the record on its face shows its incompleteness. Nor are they conclusive when fraud, or the like appears. [Davis Mill Co. v. Bennett, 39 Mo. App. 460, l. c. 464. See, also, Preston v. Mo. & Penna. Lead Co., 51 Mo. 43, and cases cited, page 46.] We hold that this evidence, in view of the obviously incomplete entry of what Mr. Hess did state, was admitted properly over the objection of plaintiff, and it tends to prove that the matter of

these warrants was brought up at that meeting and that it was distinctly understood that the adoption of the proposition submitted by the board of directors at the meeting of 1900 was not in any way whatever to be held to bind the landowners of the district to the payment of the warrants that had been theretofore issued for the construction of the seventeen-mile piece of levee.

Apart from that, however, the proposition submit-- ted, which was adopted by the resolution of a decided majority of the landowners there present and voting, contains intrinsic evidence of the fact that there was no ratification whatever of the action of part of the landowners of the district at the meeting held in November, 1893, in authorizing a tax to pay for the old levee. The proposition itself, as submitted, was for the construction of a levee "from the New Madrid county line in the Mississippi river northward along the north bank of Big Lake to the Still House; and it is further ordered and determined *that the levee heretofore built shall be strengthened,* . . . and that it is necessary to construct *a levee and strengthen and repair the old levee as above set forth."* The proposition submitted to the landowners in the form of a resolution was "that in order to defray the expenses of surveys, estimates of levees *to be built and cost thereof,* and to pay the officers, agents, servants and employees of said levee district, we do hereby order the assessment of a tax," etc. In the notice to the landowners, after describing the line of the levee as taking in the whole east and north sides of the county, they were notified to appear at the meeting of July, 1900, to show cause if any they had why the land should not be assessed with their proportionate part of the cost of said work and an estimate of the probable cost of the work and of the amount of assessment *"as will be necessary to pay for said work,"* would be made known to the landowners present, "and a vote

will be taken *whether the proposed work shall be done* in said district as above described." The report and estimate of the engineer and the assessment of the assessor, "were laid before the landowners present, showing that the probable cost of the levee would be $262,784 and that the probable rate per centum therefor on the valuation of said lands as increased by said work would be forty per centum. and the proposition was then submitted to the landowners in said district benefited by the work present in person or by agent or attorney *whether said work should be done, whether said levee should be built and the said forty per centum be assessed against said lands to build said levee.*" This was the proposition submitted, voted on and adopted.

It would be hard to use words that more clearly indicated that the proposed tax was to pay "for work thereafter to be done;" to "thereafter construct a levee;" to. "repair the old levee." No one reading the resolution as adopted could by any possibility have supposed that authorization for payment of work theretofore done was contemplated. In the estimate submitted, when the old levee is referred to, the language used is, that the estimate submitted and the ratification which is asked of the landowners, embraces the cost, not of the *building* of the original seventeen miles, but "that a levee *shall be* built around and along the river front of said levee district from the New Madrid county line in the Mississippi river northward along the north bank of Big Lake to the Still House; and it is further ordered and determined *that the levee heretofore built shall be strengthened,* that such levee and such repairs are necessary to protect the district from inundation and overflow from rivers; . . . that it is necessary to construct a levee *and strengthen and repair the old levee* as above set forth." Counsel for appellant themselves say in their reply brief: "Bear in mind that seventeen miles of this same levee which

the board was ordering built at this time, had been constructed and paid for by the warrants in suit and others of similar import. Notwithstanding this.levee had been built, the board of directors ordered it built again and submitted that proposition to the landowners at the Crosno meeting and they decided to build it and voted a tax for that purpose.'' But none of the warrants here involved were for rebuilding the old levee; the expenditures authorized were to repair that, not to pay for the old work but to pay for new work. It therefore is very clear that all that was contemplated in connection with the old levee was to repair and strengthen it, if necessary even rebuild it; not a word is used looking to payment for work before then done in building the old levee. There was a distinct declaration that the fund derived from the taxation to be ordered and to be levied under the action of the landowners of the district had in 1900, was solely for payment of work thereafter to be done. Hence we find there was no express ratification of the issue of these warrants.

But it is said that an estoppel has arisen by. the act of the directors in using the old levee or in repair- ing it, and that the district is estopped by that from refusing payment of these warrants.

There is testimony to the effect that this part of the levee constructed under the vote of 1893 is in use and has been repaired. For that matter, it may be noted that there is testimony that parts of a levee constructed in 1854 and afterwards are also in use. That the seventeen miles built under the orders of 1893 were there, is certain. What were the people of the district to do with it? Were they to tear it down and start over? Were they to refuse to repair it as needed? In short, unless these public officers of the district, or the public, the landowners who constituted the district, were to abandon this levee entirely, were they to pay for its construction? We do not consider

it necessary to here pass on that. The question here is as to payment of these warrants, and as to whether the district can, in this action, be required to pay them, to pay these warrants drawn without authority of law and for this old unauthorized work. In the Wall case the Supreme Court had before it the question of the validity of the assessment and levy of taxes from which to pay these warrants. It was there held that a tax assessment could not be laid unless authorized by a meeting of the whole district, and when an assessment is laid it must cover all the lands in the district; that in the case then before the court, the board of directors had undertaken to say that some lands in the district would be improved and some not and they undertook to divide the district, notifying only the landowners of a part of the district, and giving protection to the part they thought needed it and leaving unprotected the part they thought did not need it, and imposing an assessment on a part to the exemption of the rest, and the court said (l. c. 221): "The board of directors have no such power, nor can the county court confer that power on them, nor would it change the case if their action was prompted by an understanding on their part that the landowners in the portion of the district left out did not wish to come in. While the district remains as the county court organized it, it is a unit that no one else can devide." And further, at page 223, the court held: "It is only in a meeting to which all the landowners in the district are called, with the notice and in the manner prescribed in section 6681 (R. S. 1889), that authority to build a levee and lay an assessment to meet the cost can be given, and even in such meeting the assessment cannot be partial; it must cover all the lands in the district, or it will be binding on none. It follows from the foregoing interpretation of the provisions of chapter 101, Revised Statutes 1889, that the meeting of November 28, 1893, which essayed to

authorize the construction of the levee and the assess-
ment to pay for it was itself without authority and
all its acts invalid."

It is contended by the learned counsel for appel-
lant in this case, that that decision is neither between
the same parties nor does it declare these warrants
void, and that the remarks of Judge VALLIANT, who
delivered the opinion, that all the acts of the meeting
of November 28, 1893, were "without authority and
invalid," are mere *dicta.* It is true that that case
was not between these same parties and that it arose,
not on the payment of the warrants but on the validity
of an assessment of taxes to raise funds with which
to pay the warrants. But we do not consider these
words of Judge VALLIANT mere *dicta,* and the opin-
ion does declare the law for us and is conclusively
binding upon us in determining that the meeting of
a portion of the landowners in the district, held in
1893, was not such a meeting as provided for by law;
that all its proceedings were invalid, and that the
assessment levied to pay warrants, issued for that
work, was invalid. It is difficult to escape the con-
clusion that invalid as here used means void, although
it is true that the two words are not always synony-
mous. But it is clear that by this decision, as is said
by our Supreme Court in Wilson v. King's Lake
Drainage & Levee District, supra, when referring to
the decision of the court in King's Lake Drainage &
Levee District v. Jamison, 176 Mo. 557, 75 S. W. 679,
that the proceedings before had in the creation of the
district and levy of the tax were "torn up root and
branch. . . . With that opinion the contracts made
and the warrants issued by the old board fell to the
ground." Our Supreme Court, in the Stotts-Wall
case, certainly has announced that in consequence of
the invalidity of the proceedings of the meeting of
1893, no tax levy can be made or enforced in payment
of these warrants. The validity of these warrants de-

pends on the validity of the proceedings of the meeting by which their issue was ordered. Those proceedings falling, these warrants fall. If we were now to say that the funds arising under the levies made by authority of the proceedings of July, 1900, can be reached or, more properly speaking, that these warrants can be merged into a judgment, to be enforced against the only fund which this board of levee commissioners has at its disposal, namely the funds derived from the assessment and levy authorized by the meeting of July, 1900, we would virtually be overturning the decision of the Supreme Court in the above case, a thing we cannot do. That court has there specifically held, and as applying to the tax levied or ordered to be levied in October, 1893, for the construction of this seventeen miles of levee, that no tax levy can be made for that purpose because the proceedings authorizing it were invalid. As before noted, as said in the Wilson case, supra, of another case, the Stotts-Wall decision tore up and destroyed, root and branch, all of the proceedings held for the construction of the seventeen miles of levee. We cannot escape the conviction that destroying or holding invalid the proceedings under which the warrants were issued, destroyed, made void, warrants, and we so hold.

Furthermore, and as a reason why this action on these warrants cannot be maintained, it is to be remembered that there is no pretense that there is any fund at hand or at the disposition of defendant, arising from that previous tax levy. The only funds now available are the funds arising from the tax assessment and levy authorized by the meeting of July, 1900. Clearly, therefore, unless we are to overturn the decision of the Supreme Court in the Wall case, we cannot require these warrants to be paid out of any part of the tax levy authorized by the meeting of July 21, 1900, and to be used in payment of work

thereafter to be done. To sustain a judgment here for plaintiff, we would in effect be doing that.

Whether the levee district is liable to pay for that part of the levee which was built under the authorization of 1893, by reason of acceptance of all of it, is not before us. This, unlike the Wilson case, is an action on these invalid warrants. Whether an action can be successfully maintained for the work and labor done in the construction of this seventeen miles of levee (see Louisiana v. Wood, 102 U. S. 294), is not now before us. It is beyond question that these warrants, drawn in payment against the tax authorized by the district in July, 1900, cannot be paid out of the tax levee authorized under the action then taken and the resolution then adopted. None of that fund can be diverted to the payment of work before then done, nor can payment of these warrants, as warrants, be enforced against this district.

We think the learned trial court committed no error in refusing the declaration of law asked for plaintiff and that its conclusion upon the facts in the case, under the evidence in the case, is not only sustained by the evidence in the case but is a correct conclusion of the law under that evidence. The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.