STATE OF MISSOURI at the relation of JOE McCRATE, SR., ALBERT HOGGARD, JOHN CLIPWELL, C. D. DUNN, W. S. EDWARDS, SR., and S.· L. HUNTER, Relators, v. O. R. RHODES, Presiding Judge of the County Court of New Madrid County, S. S. THOMPSON and ELON PROFFER, Associate Judges of the County Court of New Madrid County.—163 S. W. (2d.) 978.

Court en Banc, July 28, 1942.

*Henry C. Riley, Harry H. Bock* and *R. F. Baynes* for relators.

*James V. Conran* for respondents.

ELLISON, C. J.—Original proceeding in prohibition to the judges of the county court of New Madrid County to prevent them from selecting judges of election from a list of names deposited with the county clerk by J. V. Conran on July 20, 1942. Relators' petition was filed here without notice to respondents on July 22, only 13 days before the state primary election (set by statute for August 4) at which said election judges are to serve. Our provisional rule was issued forthwith, with a telegraphic stop order, directing respondents to take no action in the premises pending our consideration of the cause. The order· further required respondents' brief or suggestions and return to· be filed on July 27, and relators' suggestions to be filed on the same day; also that the cause be submitted on these pleadings and suggestions. In other words, our provisional rule

was issued on the condition and understanding that no issue of *fact* would be tendered, because it would be impossible to hear and determine the cause in the short interval before the election if the taking of testimony on controverted issues of fact were required. We have disregarded our rules and the whole proceeding is necessarily somewhat informal owing to the press of time.

Relators' petition is based on Sec. 11502, R. S. Mo. 1939, Mo. R. S. A. sec. 11502, which requires each of the two political parties polling the highest and next highest number of votes at the last preceding general election to furnish to the county court "through its central committee" a list of proposed names for election judges in the county, at least 15 days before the election; and the county court is required to choose the election judges, one-half from each list. In default of such action by either of said parties, the county court may make its own selection of election judges for such party.

Relators' petition for prohibition further alleges that on July 18 Democratic County Central Committee of New Madrid County held a meeting at the court house after due notice to each member, for the purpose of selecting said list of names; and that they were selected, and "a list thereof made, approved and ordered certified by the Chairman of the Democratic Central Committee and attested by the Secretary of said meeting." It is then alleged that said chairman and secretary filed said list of names with the county clerk as required by said Sec. 11502; but that on July 20 J. V. Conran, a candidate for nomination as prosecuting attorney on the Democratic ticket, filed in the county clerk's office a list of proposed names for election judges, which were not authorized by the Democratic County Central Committee; and that the respondent county judges in excess of their jurisdiction were about to select said election judges from said unauthorized list.

Respondents' return alleges that said Democratic county central committee meeting was called by its chairman suddenly and in bad faith on the afternoon of July 17, to convene on July 18; that all of the members of the committee were not notified; that the notice of the meeting did not state its purpose was to select a list of names for election judges; that there should be 22 members of the committee but part of the places are vacant; that a quorum was not present at the meeting, only the chairman being present, with one other member for a brief time; that if the chairman had proxies from other members it could not have been in a number sufficient to constitute a majority, since the respondent judges have personal knowledge that 13 of the members of said committee were not present in person or by proxy, and objected to said meeting. It is further alleged that said list of names filed by said county chairman was insufficient in form, and failed to show a quorum was present at said meeting or that a vote was taken on the list of names proposed for election judges and the

same approved by a majority. Finally, respondents' return alleges that on July 20, fourteen (a clear majority) of the members of the committee subscribed and presented to the county court a list of proposed names for election judges, this being the list deposited by the said J. V. Conran and attacked in relators' petition. In addition to this it is alleged an injunction suit involving the same subject matter is pending in the circuit court of New Madrid County.

This is enough to show that very distinct issues of fact are raised by respondents' return. A copy thereof was not served on relators (just as they did not notify and serve respondents with a copy of their petition). However, counsel for relators have advised this court by telephone that while not admitting, yet they will not controvert the issues of fact tendered by the return; and that they desire to submit the cause on the issues of law raised in the Suggestions filed in support of their petition. This in effect amounts to a submission of the cause on the pleadings; and is equivalent to a demurrer to respondents' return, on the theory that the facts there alleged are legally immaterial. The theory advanced by relators in their Suggestions is that the list of names certified to the county court by the chairman of the Democratic county central committee, and attested by the secretary of the meeting, imports verity and must be taken as true by the respondent members of the county court regardless of the actual facts; that it can be attacked only in a direct proceeding; and that neither the filing of the counter-list deposited by J. V. Conran, nor the issue raised in this prohibition proceeding as to the validity and authenticity of the list filed in the county court by the county chairman, is a direct attack thereon. The authorities cited by relators are: 20 Am. Jur., secs. 1165, 1166, pp. 1018, 1019; State v. Main, 36 L. R. A. 623, 628-9; 22 C. J., secs. 1426, 1427, p. 1085, sec. 1441, p. 1088; Davis Mill Co. v. Bennett, 39 Mo. App. 460; Watts v. Levee Dist., 164 Mo. App. 263, l. c. 283; Smith v. Mo. Ins. Co., 60 S. W. (2d) 730.

The law stated in 20 Am. Jur., sec. 1165, is that the records of "local legislative bodies" cannot be impeached by parol evidence; but Sec. 1066 states a limitation on this doctrine where the attack is directly made by proceedings in their nature equitable. The cited sections of 22 C. J. are to the same effect as regards school district records, records of highway commissioners, and records of private corporations. State v. Main, 69 Conn. 123, 36 L. R. A. 623, 628-9, was a criminal prosecution for violation of a statute requiring the destruction of fruit trees infected with a certain disease. It was held that parol evidence was inadmissible to impeach certain regulations of the state board of agriculture with reference to the destruction of such trees, by showing minutes of the meeting of the board at which these regulations were adopted, had been interlined.

1074

The Missouri cases cited seem to be *against* relators. Smith v. Mo. Ins. Co. (Mo. App.), 60 S. W. (2d) 730, 732(2), holds hospital records are *prima facie* evidence of the facts recited. Davis Mill Co. v. Bennett, 39 Mo. App. 460, held the minutes of a meeting of the board of directors of a private corporation could not be impeached in a suit to recover salary money overpaid to its secretary, by showing the president of the company had voted for the secretary's salary increase, whereas the minutes were silent on that question. The decision conceded, however, that the facts can be proven by parol where the records are incomplete on their face or where there has been fraud, oversight, omission or mistake. The same is held also in Watts v. Levee District, 164 Mo. App. 263, 283, 145 S. W. 129, 136. See also State ex inf. Mansur v. McKown, 315 Mo. 1336, 1348, 290 S. W. 123, 128(11), as to what *is* sufficient in the minutes of an annual school meeting.

If the doctrine of the presumed verity of the *minutes* of board meetings applies to this case at all, we think the exception just stated is the one applicable in this instance, considering the allegations of relators' petition and respondents' return. The petition does not even allege that a quorum was present at the meeting of the county central committee, or that a majority of those present voted for the list submitted to the county court. Neither does it allege that such facts were certified with the list. Obviously they were basic and called for; and the return disputes both facts. But the stronger reason for rejecting the relators' contention is that the law will not permit the chairman and secretary of a county central committee to certify a list of proposed election judges to a county court, and thereby *force* the court to accept and appoint the election judges from that list, regardless of what the actual fact is as to whether the list was selected by the committee, and without any showing about it. This would amount to nullifying the statutory powers of the committee.

There is a case almost directly in point, State ex rel. Kelton v. Young, 160 Mo. 320, 60 S. W. 1086. It held that where the central committee of a county divided into two factions, and each certified a list of candidates as nominees for county offices, it became the duty of the county clerk to determine which list represented the will of a majority of the committee, and to accept as nominees those proposed by a majority of the committee. In that case, by coincidence, it was determined the faction to which the county chairman and secretary of the committee belonged was *not* the majority. So also, State ex rel. Keil v. Riechmann, 239 Mo. 81, 104, 142 S. W. 304, 311, holds that only a quorum of a committee (in that case the Republican City Committee of St. Louis) can sit as the committee, though a majority of that quorum can take authoritative action. It is our view, and we hold, that the respondent county judges had the right to look behind the list of proposed election judges certified by the chairman

of the county committee when it was challenged by members of the committee, and especially since the certificate failed to show a quorum present and that showing is not attempted to be made otherwise.

One other point. Relators contend that even conceding the list certified by the county chairman was not authoritative and unimpeachable, nevertheless the same is true of the list deposited by J. V. Conran, because at best it was merely *sponsored* by fourteen individual members of the committee, who were not assembled in meeting and who acted without notice to the other members of the committee. For the purposes of the case we will grant that is true; but even so, it merely presents a situation where neither side had presented an *authoritative* list. The county court therefore had power to select the election judges in their own discretion, under the last proviso of Sec. 11502, supra.

Our provisional rule, is discharged. All concur, except *Hays, J.*, absent and *Gantt, J.*, not sitting.