## J. H. HINERMAN, Respondent, v. HELOISE A. WILL-IAMS, Appellant.

Springfield Court of Appeals, August 10, 1920,

1. **MUNICIPAL CORPORATIONS: Statutes Authorizing Proceedings to Enforce Tax-bills for Improvements Strictly Construed.** Statutes, authorizing proceedings for the enforcement of tax-bills for public improvements against adjoining property, which are proceedings *in invitum*, must be strictly followed.

2. ———: **"Publication" of Improvement Resolution Four Times in Semi-weekly Paper Sufficient.** Under Revised Statutes 1909, section 9255, as re-enacted by Laws 1911, page 340, requiring publication of a resolution for improvements in some newspaper for two consecutive insertions in a weekly paper, or for seven consecutive insertions in a daily paper, does not exclude publication in a paper other than a daily or weekly, and publication for four consecutive insertions in a paper published twice a week complies with the statute.

3. ———: **Publication, Not Complying With Statute, Insufficient Though It Gives Equal Notice.** The publication of a resolution for street improvements in a manner which does not comply with the statutory requirements is insufficient, even though the notice as published was as effective as if the publication had complied with the statute.

4. ———: **Council's Finding That Protest Against improvement Was Insufficient, Held Conclusive.** Where a protest against a public improvement was considered by the council which heard evidence and decided that the petition was not signed by enough residents or property owners to prevent the improvement, and the only evidence offered in court in a suit on the tax-bill was an abstractor's list of the property owners with which neither party agreed, the finding of the city council is conclusive.

5. ———: **Owner of Tax-bill Can Sue in Own Name.** Under Revised Statutes 1909, section 9254, subdivision 9, as modified by Laws 1911, p. 340, which omitted the provision of the revision section exempting the city from payment of costs, the owner of tax-bills for public improvements may bring an action thereon in his own name, though he might also have proceeded in the name of the city to his use.

Appeal from Circuit Court of Pemiscot County.—*Hon. Sterling H. McCarty,* Judge.

AFFIRMED.

*C. G. Shepard* for appellant.

(1) The resolution published is the process by which the city council acquired jurisdiction of said improvements. It is a statutory method of obtaining jurisdiction and the statute must be strictly complied with, and unless the statute is strictly complied with the city council has no jurisdiction in the premises, and all proceedings in connection therewith are void. Webb v. Strobach, 143 Mo. App. 459; Stanton v. Thompson, 234 Mo. 7; John McMeneny Inv. and Real Estate Co. v. Stillwell Co., 184 S. W. 467; Hartley v. Bryantor., 17 F. 873; Bigelow v. Chatterton, 51 F. 614; Cissèll v. Puloski Co., 10 F. 891; Cohen v. Portland Lodge, 152 F 357.; Cohen v. Portland Lodge, 144 F. 267. (2) The parties protesting against having the work done were entitled to have an opportunity to appear before the city council and be heard on the proposition of whether or not a majority had in fact signed the protest, and the actotin of the council in calling a meeting at an unusual time, and without giving the protesting parties a chance to appear and be heard was a fraud upon such parties and sufficient of itself to vitiate the entire proceedings. Thompson Lumber Company v. Muskegon, 115 N. W. 957; Hyland Ossining, 57 Misc. 212, 107 N. Y. S. 225.; Hensley v. Butte, 92, p. 34; Road Imp. Dist. No. 1 v. Glover, 110 S. W. 1031; Sears v. Atlantic City (N. J. Law), 68, 1093; Mulligan v. Smith, 59 Cal. 230; Zeigler v. Hopkins, 117 U. S. 683. (3) The jurisdiction of the city council to have the work done depends on whether or not a majority of the resident property owners owning a majority of the front feet abutting on that part of the street to be improved filed a protest with the city clerk protesting against having the work done. If such protest was in fact filed, then the council was without jurisdiction to proceed farther, and the fact that the

council made a finding that a majority had not protested when in fact they had, would no more give the council jurisdiction, than "a man could lift himself from the ground by pulling at his own boot straps." Rhodes v. Coch, 176 S. W. 286; State ex rel. Coch v. Farrington, 195 S. W. 1044; Mulligan v. Smith, 59 Cal. 230; Zieglar v. Hopkins, 117 U. S. 683. (4) Where a life tenant resides on, and occupies the land against which the improvements are to be charged, he alone is the party to protest, therefore the protest filed in this case signed by Mollie L. Steele, Elizabeth Stpelton and Dr. H. T. Byars, they each being life tenants of the property represented by them, was a protest for said property and it was not in fact necessary for the other parties in interest to sign said protest. Rayburn v. Wallace et al., 93 Mo. 326.

*Ward & Reeves* for respondent.

(1) There is no provision of law in the charters of third class cities fixing the time of either regular or special meetings of the city council. Indeed there is no specific provision requiring meetings of the council. So, by necessary implication, the city council has the power to designate by ordinance the time of holding its regular meetings, and also to make reasonable provision by ordinance for the manner of calling and holding its special meetings. As nothing was shown on the trial of this case to indicate that the special meeting was held contrary to the general ordinances of the city, or contrary to the previous conduct or custom of the council in such matters, then it will be presumed that the meeting was lawfully held, and that the official acts of the council were legal. Savings Bank v. Ridge, supra; City of Rolla v. Schuman, supra; Paving Co. v. Ullman, 137 Mo. 568; Excelsior Springs v. Ettenson, 120 Mo. App. 222; Paving Co. v. Bath Co., 136 Mo. App. 558; Gist v. Construction Co., 224 Mo. 379; Dillon on Municipal Corporations (5 Ed.), sec. 538. (a) The statute applicable to these proceedings does not provide for a public hearing before the council on the question of protest, nor does the statute require

such proceedings to take place at the regular meetings. Neither does the statute require or contemplate that notice of the meeting shall be given the protestants. Laws of Missouri, 1911, pp. 337-341; Laws of Missouri, 1917, p. 374. (2) The petition is sufficient. In fact it is much fuller and went much further in its averments than the law requires. City of Gallitan v. Netherton, 189 Mo. App. 24; Paving Co. v. Bath Co., 136 Mo. App. 555; Mexico v. Lakelan, 129 Mo. App. 180; Joplin v. Hollingshead, 123 Mo. App. 602; City of Carthage v. Badgley, 73 Mo. App. 123; Vieths v. Planet P. & F. Co., 64 Mo. App. 207; Turner v. Patton, 54 Mo. App. 654.

BRADLEY, J.—This is a suit on a tax bill issued by the city of Caruthersville, a city of the third class, against defendant's property for paving improvements. The cause was tried before the court and the finding and judgment went for plaintiff. Defendant, failing to get a new trial appealed.

The defendant answered by general denial, and special plea to the effect that the city council was without jurisdiction of the *res,* and could not, therefore, lawfully authorize the issue of the tax bill sued on. Defendant's two principal assignments are: (1) That the publication of the resolution required by section 9255, Laws 1911, p. 340, was not made as required by said section; (2) that a majority of the resident owners of the property affected, and who owned a majority of the front feet filed a sufficient protest as provided for in section 9255.

The city council on July 2, 1917, passed a resolution as required by section 9255 declaring the improvement necessary. This resolution was published in the Twice A-Week Democrat, a newspaper of general circulation, and printed and published in the city, for four consecutive issues, on July 3rd, 6th, 10th, and 13th, 1917. The statute, section 9255, says that the council shall, by resolution, declare that they deem such improvement necessary to be made "and shall cause such resolution to be published in *some* newspaper printed and published in the city for two consecutive insertions in a weekly paper, or

seven consecutive insertions in a daily paper.'' The
resolution was neither published in a weekly paper nor a
daily paper, and defendant says that the statute not hav-
ing been complied with in this respect the city council did
not acquire jurisdiction over the property to be taxed for
the improvement, and as a consequence the tax bill sued
on is wholly void. It was said in Leach v. Cargill, 60 Mo.
316, that proceedings to compel the citizen to pay for im-
provements in front of his property are proceedings
*in invitum,* purely statutory, and therefore to be strictly
construed. [See, also, Schulte v. Currey, 173 Mo. App.
578, 158 S. W. 888; Webb v. Strobach, 143 Mo. App. 459,
127 S. W. 680.] One of the principal objects of the reso-
lution and its publication is to advise the property owners
affected of what is contemplated by the proposed im-
provement so that they may have an opportunity to arrest
the proceedings by a majority protest. [City of Kirks-
ville ex rel. v. Coleman, 103 Mo. App. 215, 77 S. W. 120;
Schulte v. Currey, supra.] We find no case in this State
construing this statute in the respect here considered, and
no case of another State construing a similar statute.
Cases are numerous in our own and other States that
such statutes must be strictly followed. But we think
when the statute is interpreted alone by its letter that it
does not necessarily exclude publication in any paper ex-
cept a daily or weekly. The statute says that publication
shall be in *some* newspaper printed and published in the
city, for two consecutive insertions in a weekly or seven
consecutive insertions in a daily In each case the refer-
ence to the character or kind of paper has no significance
except to fix the time or duration of the publication. In
the case of the daily the time between the first and last
insertion would be one week, and in case of the weekly the
time between the first and last insertion would be one
week. This statute, it will be observed, does not require
the resolution to be published for so many days or weeks,
but that it shall be published in consecutive insertions.
In Fellows v. Dorsey, 171 Mo. App. 289, 157 S. W. 995,
this same statute and the publication of the resolution
therein required was involved. There the publication

was made in a paper held to be a *daily* within the meaning of the statute although it had no Sunday issue. The first publication was on June 27th, and the last on July 6th. There was no publication on June 28th, July 4th and 5th. Ten days elapsed between the first and last insertion, but during those ten days only seven issues were published, and the resolution appeared in each issue. One of the ten days was Sunday, one the 4th of July, a holiday, and July 5th, a work day. The paper was not issued on either of these three days. This was held a sufficient publication. In Porter v. Paving & Construction Co., 214 Mo. 1, 112 S. W. 235, a city ordinance which required publication of notice for letting a contract to construct a sewer for ten *successive* days before letting the contract was under consideration. The first publication was April 5th, and last one April 17th, making eleven publications, but there was no publication on April 7th and 14th, because these days were Sundays and the paper was not issued on Sunday. The contention there was that under the city charter and the ordinance it was essential that notice should be published every day whether Sunday or not; that *successive* meant an unniterrupted course of publication, and the failure to publish on the two Sundays rendered the notice insufficient, and likewise the tax bills void. It was held in that case that the publication was sufficient. While we recognize that these cases do not rule directly on the point involved in the case in hand, yet they are cases in *in vitum,* and though the statute is to be strictly followed, yet a construction is given in harmony with sound reason and common sense. The purpose of the statute, section 9255, as pointed out, is to give the resident property owners affected an opportunity to protest if they desire, and we do no violence to the statute or good reason when we hold that publication in a newspaper on July 3rd, 6th, 10th and 13th imports notice as effectively as would have been the case had the publication been on July 3rd and 7th in a weekly or for seven consecutive insertions in a daily. To give any other construction would make it impossible under the statute

as now for a city of the third class to improve its streets and sidewalks unless it had a daily or a weekly paper. We recognize, too, that the question here is not that the *notice* given may or may not have been as effective as if the publication had been in a weekly or a daily, but that the point is: Was publication of the resolution in a paper issued "twice a week" and on the dates mentioned a compliance with the statute: We hold that it was.

Defendant contends that even though it be held that the publication of the resolution is sufficient, that plaintiff cannot recover because the protest filed represented the majority of the resident property owners who owned a majority of the front feet on the street to be improved. There was a protest filed, and certain individuals who signed the same later endeavored to withdraw therefrom. Defendant contends that the attempt to withdraw came too late, and that the attempted withdrawal was ineffective, and that the protest should be considered as when filed. It is not conceded by plaintiff that if the protest be considered as it was when filed that it represented the majority of the resident property owners affected who owned a majority of the front feet. Also it is contended by plaintiff that at least two of the protestors could and should be eliminated, because their names appear to have been signed by an agent, provided, of course that the city council found that the agent or purported agent did not have authority to sign. Also plaintiff urges that one of the two protestors who signed by an agent did not in fact protest against the work, but protested against the kind of material which he understood would be used in making the improvement. It appears that the character of material which this protestor objected to was not used, and plaintiff says that this protestor should, therefore, not be counted in any event. Also it appears that the residence of some of the protestors was gone into in the trial of this cause, and also the *interest* owned, whether life estates or remainders, and other questions involving the right to protest, or the right to be considered as "an owner," etc. Plaintiff contends that if the protest be considered in its entirety as to the resident owners, ex-

cept as to the one who protested against the material, that it does not represent a majority of the owners, and that in no event does it represent a majority of the front feet. There is nothing of consequence to show what facts were before the city council in its consideration of the protest or its finding that the *majority* as required by the statute had not protested. All that was in evidence in the trial of this cause that was before the city council were a list of purported property owners, and the number of front feet owned by each, prepared by an abstract company, the protest, and the attempted withdrawals. Neither side agrees with the purported list of property owners.

In Rhodes et al. v. Koch et al., 189 Mo. App. 371, 176 S. W. 286, 195 S. W. (Mo.) 1044, plaintiffs as the owners were seeking to enjoin the contractor and the city, a city of the third class, from making certain paving improvements or issuing tax bills. The resolution declaring the improvement necessary to be made was published from May 6th to 13th inclusive. What was conceded to be a sufficient protest, if filed in time, was filed on May 12th, one day prior to the last insertion of the resolution in the newspaper. The city council sought the advice of the city attorney, and this official advised that the protest was filed out of time, and for that reason was of no force and effect. The statute says that if the resident owners, etc. ''shall not within ten days *after* the date of the last publication file'' the necessary protest that the city council shall have the power, etc. This Court held that the protest was not filed out of time as the city attorney advised; and that the finding of the city council that the necessary majority had not filed protest was based upon an error of law and was reviewable. In that case there was no controverted fact, and the only question was purely one of law; but such is not the situation in the case at bar. Here the whole field of fact was gone over in the circuit court. Defendant endeavoring to establish as a fact that the protest was sufficient, and plaintiff endeavoring to establish the contrary. We say, therefore,

that under this record, and under the statute the finding of the city council is conclusive.

Defendant makes the further contention that plaintiff who is the contractor and owner of the tax bill sued on cannot prosecute this cause in his own name; but that the cause should be prosecuted in the name of the city to the use of plaintiff. Defendant concedes in his brief that there have been similar suits prosecuted in this State in the name of the owner of the tax bill, but he says in none of these was the point raised. Sub. 9 of section 9254 as it appears in the revision of 1909 provides that "all special tax bills issued by such cities for any purpose authorized by this article shall be assignable and collectible in any action brought by the owner or holder of said bills, but the city shall not be liable for the costs in any such suit in any action brought by the owner." This same section as modified and reenacted, Laws 1911, p. 340, provides that "all special tax bills herein authorized shall be assignable, and the owner or holder of such tax bill may enforce the collection thereof by an action in any court having jurisdiction thereof." The language last quoted takes the place of the language as appeared in the revision of 1909. It will be observed that no reference is made in the Act of 1911 to the city not being liable for costs. We think that the cause was properly prosecuted in the name of the owner. Plaintiff says that he might have proceeded in the name of the city to his use, but that he could also proceed in his own name, and we agree.

Defendant asked and the court refused a number of declarations of law. Also complaint is made about the property owners affected not having an opportunity to be heard, etc. Our opinion we think covers all points raised in the offered declarations that it is possible or permissible to raise under the provisions of section 9255 as amended by the laws of 1911, p. 340, and under the record before us. The judgment below should be affirmed, and it is so ordered.

*Sturgis, P. J.,* and *Farrington, J.,* concur.