CITY TRUST CO., RESPONDENT, v. FLORENCE A. CUNNINGHAM, APPELLANT.*

Springfield Court of Appeals. Opinion filed September 23, 1929.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2868, p. 898, n. 87; Municipal Corporations, 44CJ, section 2523, p. 347, n. 72; section 2563, p. 369, n. 97; section 3155, p. 684, n. 37; section 3533, p. 855, n. 53.

*Chas. G. Shepard* and *Moore & Fitch* for appellant.

898

*Ward & Reeves* for respondent.

SMITH, J.—The plaintiff sued in this case as the assignee of a tax bill issued by the city of Caruthersville for certain improvements made on a part of Ward avenue. Caruthersville is a city of the third class. The tax bill was issued on the 4th day of April, 1918, for $533.29, to bear interest at the rate of six per cent per annum, and was payable in five annual installments.

The petition was in the conventional form upon said tax bill and was filed at the March term, 1921, of the Pemiscot county Circuit Court. On the 23rd day of June, 1928, defendant filed her amended answer in which after a general denial she alleged that the contract entered into between the city of Caruthersville and J. H. Hiner-man, the contractor, for doing the street work was not in accordance with the advertisement for bids in that the advertisements for bids made the requirement that the bidder for said work must expressly state in the bid that said work will be completed by December 20, 1917, as ordered by the city council and that said contract provided that "in event any of the material necessary to the paving of said street cannot be secured by the contractor after a faithful effort to do so, time, as the council may deem necessary, shall be given the said contractor to finish said work beyond the time limited in the ordinance contract." And since such provision for extension of time was not in the advertisement for bids, the city council had no right to incorporate in the contract for the work a provision for

the extension of time not mentioned in the advertisement for bids and which extension of time gave the contractor an advantage over the other contractors which is fraud in law and vitiated the contract and made the tax bills issued for said work null and void; that said provision written into the contract contrary to the advertisement under which bids were received worked a fraud on both the property owner and other bidders inasmuch as it permitted the successful bidder to receive the price of a short time job when he had the advantage of a long time contract which is a secret matter between the city council and the contractor and deprived the property owner of the opportunity of having the work done at the lowest competitive bid and deprived the other bidding contractors of the opportunity of bidding on the contract on the same terms and conditions as the favored contractor received.

The answer further alleged that after said contract was entered into for doing said street paving, an extension of time was granted said contractor until September 1, 1918, and there being no provision in the advertisement for bids for an extension of time for the completion of the work, the city council had no right to grant such provision in such a contract entered into by and between the city and the contractor, J. H. Hinerman, and the length of the time thus given said contractor to complete said work shows upon its face that the contract was not awarded in accordance with the advertisement for bids and that the successful bidder received an undue advantage over other bidders and the property owners were caused to pay for said work based on a short time contract when in fact the successful bidder was given almost a year more of time in which to complete the work than the advertisement for bids gave other bidders to understand would be allowed and that in fact the work for which the tax bills were issued was not completed until the 30th day of March, 1918, a period of time more than three months longer than the advertisement for bids apprised all bidders that said work would have to be completed.

There was a further allegation that the work of grading and paving said street was not done according to contract, that said paving was put down in such an unskillful manner in violation of the terms of said contract and out of such poor material and with a mixture of cement, sand and gravel not in accordance with the contract so that said street when completed was practically worthless and of no real benefit to the property owners; that the plans and specifications of said work were not complied with in many instances; that said contractor laid the paving below grade, thinner and weaker and of less value than said pavement would have been if placed according to specifications; that at certain places on the street the

pavement was laid higher than it should have been while at other places on the same street the pavement was laid below the grade, by which drainage was cut off and a pond or pool was formed which would hold water several inches deep after each rain over a great part of said pavement, which said water would remain over the pavement until it evaporated and dried up from the wind and sun; that said water standing on said pavement and the manner in which said pavement was contracted and the failure of the contractor to put down a mixture of cement, sand and gravel according to the terms of contract caused said pavement to ravel and wear in holes as vehicles would pass over it, thereby making the pavement practically worthless; that said contractor further violated the provisions of said contract in that much of the pavement was laid during freezing weather and when the temperature was below 32° F. for which reason said pavement so laid was defective and of no real value and prayed to be dismissed and that said tax bill be cancelled and that the apparent lien upon defendant's property be cancelled, removed and for naught held.

The plaintiff filed as a reply a general denial.

By the answer thus filed the action was converted into an action in equity, and was tried before the court, and on the 18th day of December, 1928, judgment was rendered against the defendant on her prayer to cancel the tax bill and for the plaintiff on the tax bill in the sum of $873.17, which judgment was declared to be a lien upon the land described in the tax bill. Motion for new trial was filed by the defendant and overruled on the 18th day of December, 1928, and appeal granted to this court.

The plaintiff filed the tax bill sued on and had an admission entered of record that the plaintiff was the assignee and owner of the tax bill and then rested its case.

The defendant, to sustain the issues on her part, offered in evidence the ordinance for street paving authorizing the work done on Ward Avenue for which the tax bill sued on was issued. This ordinance was offered for the purpose of showing the conditions under which said contract was to be let, the part which defendant claims was violated is as follows:

"Before said work is let, notice of the proposed work and improvement herein provided shall be published in said newspaper published in the city of Caruthersville, which notice shall specifically state the character of the proposed work, where the same is to be done, and the time in which the same shall be completed and which time shall be fixed by the city council." And the ordinance also provided that the city clerk was directed to advertise such bids for the improvement therein provided for in the Twice-a-Week Democrat, a newspaper published in the city of Caruthersville, said bids to be filed with the city clerk not later than 6 P. M. on Wednesday, the

1st day of August, 1917, said bids to be then opened and considered by the city council and the contract let to the lowest bidder.

Defendant next offered in evidence the specifications for the improvement covering the work in question, which said specifications set out the grades of said street, the concrete foundations, kind of material to be used and the mixture of cement, sand and crushed rock with provisions as to how the mixture should be laid, the thickness thereof, etc. . . . And further provided that no concrete shall be mixed and deposited while the air temperature is below 32°F. with the provision as to wearing surface and curbs and gutters. The defendant next offered estimated costs filed July 23, 1917, and then offered the ordinance contract under which the work was done for which the tax bill in question was issued, which said ordinance contract shows that the contract was let to J. H. Hinerman and fixed the price for the entire contract of which this tax bill formed a part, and provided that street improvement shall be commenced not later than August 20, 1917, and completed not later than December 20, 1917, which said ordinance contract contained the following provision which defendant says is contrary to the advertisement for bids, which said section is as follows, to-wit: "Section 7. That in event any of the material necessary to the paving of said street cannot be secured by the contractor after a faithful effort to do so, time, as the council may deem necessary, shall be given to said contractor to finish said work beyond the time limit in this ordinance contract."

The defendant then offered the advertisement for bids which provided, among other things, that "bidders for said work must expressly state in their bid that said work will be completely by December 20, 1917 and that in no event will said work be commenced later than August 20, 1917."

Defendant offered several witnesses to the effect that the paving adjacent to said property was not in keeping with the plans and specifications and also not up to the standard as provided by the ordinance and contract. Defendant also offered a petition for extension of time filed by J. H. Hinerman which is as follows, to-wit:

"Gentlemen: On account of delays experienced by us and for which we were not responsible we hereby petition your honorable body to grant an extension of time on the contracts held by me with your city for the improvement by paving with Tarvia and concrete of Ward Avenue, Carleton Avenue, East and West 7th Street, East 8th Street and West 6th Street, to the first day of September, 1918. You are no doubt familiar with the car situation, and order having been issued by the Government prohibiting the loading of coal or open freight cars with material for road or street building purposes. We are making every effort to secure this material and assure you that if the extension is ganted that it will in no way delay the completing

of the contracts, as we will rush the work as fast as material can be obtained to work with.

"Yours truly,

"J. H. HINERMAN."

Defendant then offered record showing that the time for completing the work was extended until September 1, 1918.

The plaintiff then offered evidence in rebuttal consisting of the report of the City Engineer approving the street improvement in question which was filed March 30, 1918, and offered the report of the engineers setting out in detail the amount assessed against each parcel of real estate and particularly the amount against the parcel of real estate involved in this litigation, and then offered witnesses to the effect that the material used and the work done was reasonable and in keeping with the methods of laying paved streets at the time, and to show that the city of Caruthersville had a level surface and that because of said level condition the water was caused to stand on the streets and not because of the defective workmanship upon the part of the contractor in laying the pavement in question.

The defendant sets out and considers in her Brief and Authorities eight assignments of error. The first four are as follows: (1) When a city of the third class undertakes to pave its streets and to issue tax bills constituting a lien on the abutting property, its proceedings will be strictly construed when a tax bill is sought to be enforced against such property; (2) The proceedings to support the tax bills must strictly follow the law authorizing the tax bills to be issued; (3) The city must let the contracts for improvement to "the lowest and best bidder, upon advertisement for bids published not less than one week in some newspaper published in the city," and (4) If any change is made in the specifications after publishing notice for bids, then a new publication must be made so as to include such change, otherwise a valid contract cannot be let under the original advertisement.

We have carefully considered the evidence in the case, and the law as cited by the parties, keeping in mind that contracts for such improvements should be subjected to a reasonable analysis and construction, in a spirit of justice for the welfare of the contracting parties and the community, and have reached the conclusion that there was a substantial compliance with the contract, even though there might have been some deviation from a strict and literal performance of some of the details. A splendid statement of the rule to be followed in the consideration of such contracts is given by the late Judge Lamb in the case of Gish v. Construction Company, 224 Mo. 1. c. 379, and quoted with approval in the case of Tabb v. Burt, 296 S. W. (Mo. App.) 1. c. 821, which is as follows:

"It is a fundamental proposition that laws, whether State or municipal, are presumed passed in a spirit of justice and for the welfare of the community. It follows they should be so interpreted, if possible, as to further that purpose. Therefore, while laws and ordinances anent the improvement of streets should be subjected to reasonable analysis and construction, yet they should not be subjected to an over-nice analysis or to any unfriendly construction, springing from the notion that the contractor is prone to mischief or that street improvements are evils to be judicially circumvented. This, because it will be found that such view is bound to end in hardship on the abutting owner as well as the general public. We take it as a self-evident truth that the more technical and sour courts become in interpreting street improvement contracts, ordinances and laws, the more danger and moral hazard to the contractor creeps into every such improvement. So (as in insurance) the more the danger and moral hazard, the higher the bid of the contractor for his own self-protection in discounting that danger and moral hazard. Now, the higher his bid, the greater the cost for a given improvement. No one would deny that street improvements are a necessity of modern city life and that all streets and alleys must be eventually graded and paved. In that behalf every citizen of a town must at some time dance and pay the fiddler. Hence, he has an abiding and substantial interest in having ordinances, laws and contracts relating to such improvements construed with the utmost fairness and justice and without such nice particularity and over-refinement as unduly increase the risk of the contractor, drive up his bid and (as surely as night follows day) end in burdening those who have the bills to pay. In other words, those who live in towns are vitally interested in a situation producing the lowest responsible bidding in street improvement and inviting the most efficient competition, therefore courts can do no better service than to aid that happy consummation with every allowable art and reason of law. If, now, instead of a spirit of friendliness to such improvements, contracts, ordinances and laws (that is, assuming they are legal and just until the contrary appears), courts assume a frosty attitude, searching as with a lighted candle for technicalities, inadvertences and minor defects, not of substance, and assigning them an office in overturning an improvement scheme and defeating the collection of tax bills, then the hazards of street contracting are enhanced, competition is stifled and the price bid is swollen to the extent that the extra hazard is met with extra pay.''

Under defendants assignment of error No. V. she insists that because the original ordinance authorized the city clerk to make publication of notice for bids, and because said advertisement required the work to be commenced not later than August 20, 1917, and

because said advertisement made no provision for an extension of time for the completion of said work, and because, after the contract was awarded to Mr. Hinerman under the advertisement, a written contract between the city and Hinerman was entered into which contract contained section 7, authorizing an extension of time under certain conditions, and such extension, not being in the advertisement, the contract was rendered void. The original time for completing the work under the advertisement was four months. The work was not completed until March 30, 1918, three months and ten days after the time for completion as advertised. And she insists that because of these facts the city was without power to issue its tax bill creating a lien upon her property. Assignment VIII is to the same effect.

The testimony shows that the contract was entered into showing the date of the commencement of the work and the date of the completion thereof to be exactly as designated in the advertisement. After the contract was entered into, and after the work was started and before the time for completion of the same, a petition was filed by the contractor asking for an extension of time to complete the same, giving as a reason for such request of extension that the contractor was being delayed in securing material on account of an order having been issued by the United States Government, prohibiting the loading of coal or open freight cars with material for road building purposes. The extension was made for the reasons stated until September 1, 1918, but in fact the work was completed by March 30, 1918. It seems to us that the extension of time given the contractor was reasonable, especially in view of the war conditions under which our government was struggling at that time, and the government regulations as to the use of cars for handling material. In the case of Empire Trust Co. v. Stepp et al., 275 S. W. (Mo. App.) 982, 983, we find this language:

"We do not agree with counsel for defendants that the extension ordinances were invalid because of their failure to state a cause for extending the time which the contract provided should be regarded as good ground for such extension. The rule is well settled that the municipal assembly has the power to extend the time for the completion of a contract beyond the period specified therefor in the original ordinance if the extending ordinance is passed prior to the expiration of the time limited in the original ordinance. [Hund v. Rackliffe, 192 Mo. 312, 91 S. W. 500; Paving Co. v. Hayward, 248 Mo. 280, 154 S. W. (l. c.) 146; Jones v. Paul, 136 Mo. App. 524, 118 S. W. 522.]"

There is not a particle of testimony that there was any secret understanding between the city officials and the contractor, and there is no substantial testimony that the defendant, or any other

interested person, suffered any loss on account of the extension of time being given. We, therefore, hold this contention against the defendant.

Under Point VI the defendant contends that the City Council had no power to issue its tax bill so as to create a lien on land abutting on Ward Avenue, and extending continuously to and abutting on Carleton Avenue, a public Street of said city which was improved about the same time; that the city could not extend a valid lien beyond a line representing one-half of the distance between said parallel streets.

We think the case of Rackliffe-Fibson Construction Co. v. Investment Co., 179 Mo. App. 229, is sufficient authority for holding this point against the contention of the defendant.

Under point VII the defendant claims that where the work has been done defectively, the court is authorized to ascertain the value of the work done and award a lien for the proportionate value of the work done, and that this bill should be reduced or held void because of defects in construction.

The rule is well established in this State that a tax bill is prima-facie proof of its validity, and the burden of proof is on the party making the attack. [Mound City v. Shields, 278 S. W. 798, and cases cited.]

We have examined the evidence brought here, and concede that there is controverted testimony as to the method of constructing the pavement, some to the effect that it was not proper and not of benefit to the property owner; others to the effect that it was reasonably within the plans, specifications and contract, and since the burden of proof was on the defendant, we think she has failed to establish her case sufficient to overcome the prima-facie case made, and where an issue of fact rests on the credibility of the witnesses, as in this case, we are deferring somewhat to the finding of the chancellor who tried the case, as we have authority to do. [Keener v. Williams, 307 Mo. 682, 705, 271 S. W. 489.] And we are holding this point against the defendant.

We find no reversible errors. The judgment is affirmed.

*Cox, P. J.,* and *Bailey, J.,* concur.

ON MOTION FOR REHEARING.

SMITH, J.—The defendant contends in her motion for rehearing that we overlooked the main point in her case and disregarded the authority upon which her contention is based. In her motion for rehearing this language is used: ''It was never our intention to contend that the city did not have the right to make a reasonable ex-

tension of time for the completion of the work, had the facts and surrounding circumstances at the time the extension was applied for, justified such action on the part of the city council. Our complaint to the action of the city representing the property owners was to its action in entering into a contract binding itself to making an extension of time under certain conditions which deprived it of its discretion, as to whether or not it would make such extension when applied for.'' And in her motion she says that provision in the contract ordinance of which she complains is as follows: ''That in event any of the material necessary for the paving of said street cannot be secured by the contractor after a faithful effort to do so, time as the council may deem necessary shall be given the said contractor to finish said work beyond the time limited in this ordinance contract.''

The appellant says there is really no difference in principal between this case and the case of Koch v. Inter-River Drainage Dist., 237 S. W. 176, cited in her brief and which was not mentioned in the opinion handed down in this case. It is upon this case that she relies. We read and carefully considered this case before writing the original opinion and we think it is not in point here. In that case the advertisements provided that the contract must be completed in four months. After the bids were received the city council, disregarding the advertisement, arbitrarily wrote the contract showing the work was to be completed in eight months. In that case the trial court made and filed a finding of facts in which it was found as follows:

''Wherefore the court finds that the tax bills in suit are void, for the reason that the provision in the contract entered into by the city of Poplar Bluff and the plaintiff, V. E. Koch, providing for the completion of the works of sewer district No. 2 in eight months, operated in law a fraud, in view of the fact that the advertisement for bids published in the newspaper doing the city printing stated that the work should be completed in four months; and for the further reason that the action of the council of the city of Poplar Bluff in extending the time for the completion of said works on the 7th day of August, 1916, was without warrant of law, as the time limited in the previous order of February 21, 1916, granting an extension of time, had expired on the 1st day of August, 1916.''

The appellate court when passing on the case used this language:

''We only deem it necessary to discuss one question here, for, in our judgment, the disposition of that question settles the controversy. That question is whether the contract was valid when entered into. The trial court held that the provision in the contract allowing eight months in which to do the work, when the advertisements for the bids had stated that it would be required to be completed within four months, was a legal fraud, and invalidated the tax bills issued in payment for the work. In this we think the trial court

was right. . . . Our conclusion is that the provision in the contract giving eight months in which to do the work when the notice to bidders allowed but four months rendered the contract and the tax bills void."

No such conditions existed in this case as in the Koch case. The city council in the Koch case undertook to bind itself and the property owners at the time of making the contract. There the notice provided the work should be done in four months, but the council received a bid at a certain price to be completed in eight months and accepted the bid, and, contrary to notices published, entered into a written contract fixing the date at eight months, and because of the contract being different from the notices the court held the contract invalid. No so in this case. Here the notice was given fixing the time; the contract was made fixing the time just as advertised in the notice, and the extension of time was given later, which our courts have held can be done, and which the defendant concedes can be done, but the defendant complains that the provision was written into the contract ordinance which provided that time, as the council may deem necessary, shall be given the contractor to finish the work, beyond the time limited in the notice, in the event any material necessary to the paving cannot be secured by the contractor after a faithful effort to do so. This provision need not have been written in the ordinance and it was not necessary to write it therein, even to bind the city to an extension under certain circumstances. The courts of this State have held, and the defendant concedes, that such an extension could be given, just as effectively as if the provision had not been therein written, then, we think, such a provision had no effect whatever upon the contract, and did not affect in any way the contractor nor the property owners, and in that respect this case is different from the Koch case and we think the Koch case is not applicable.

We considered in our opinion the other points raised in the motion for rehearing, therefore we deem it unnecessary to reconsider them here. The motion for rehearing is overruled.

*Cox, P. J.,* and *Bailey, J.,* concur.