Joe W. SCALES, Plaintiff-Respondent,

v.

Tony BUTLER, Marie Butler, The Prudential Insurance Company of America, a Corporation, and Roger A. Bailey, Trustee, Defendants-Appellants.

No. 7708.

Springfield Court of Appeals.

Missouri.

April 2, 1959.

Roger A. Bailey, Sikeston, for defendants-appellants.

W. Clifton Banta, Charleston, for plaintiff-respondent.

RUARK, Judge.

This is a suit by an assignee of a tax bill to enforce the lien and, judgment having been given for the plaintiff, the defendant property owners have appealed. The improvement was the rolling and oiling of streets in Sikeston, Missouri, a third-class city, under the procedure set forth in Section 88.643 RSMo 1949, V.A.M.S. This

1. Asel v. City of Jefferson, 287 Mo. 195, 229 S.W. 1046, 1050; see Town of Carrollton ex rel. Barrie v. Thomas, Mo. App., 24 S.W.2d 218, 223; City of Glendale ex rel. and to Use and Benefit of Keyes v. Armstrong, Mo.App., 17 S.W.2d 604, 606.

section provides that the city council shall have power, by ordinance, when the cost does not exceed 60 cents per front foot, to cause the streets to be oiled and repaired and to defray the cost by a special tax assessed in favor of the city or contractor on adjoining property in the proportion of linear feet. The work may be done by the city or contracted under such terms as may be provided by ordinance.

In this instance the tax bill was issued in favor of the city and thereafter assigned to the contractor. The appellants' first contention is that the tax bill was improperly admitted into evidence because Sikeston has no authority to assign a tax bill. In this we think appellants are wrong. Section 88.643 provides that the work may be done by either the city or the contractor and that the tax bill may be collected in the name of and by the city or contractor. Section 88.500 provides that third class cities may issue and sell tax bills. And it is so held.[1]

Invalidity is also suggested because the engineer's report of cost and apportionment, adopted by and incorporated into the ordinance which apportioned the cost and directed issuance of tax bills, was not signed by any person. The statute (Section 88.643) does not make the lien dependent upon the making or filing of any engineer's report, and none is required.[2] The work of making the apportionment and assessment was the prerogative and the obligation of the city council, and there is no contention that the apportionment was inaccurate. The city council had the right to rely upon any report or calculations, signed or unsigned, which it chose. The action was that of the council, not the engineer. While it is said that proceedings for improvements such as this are *in in-*

2. City of Rolla v. Schuman, 189 Mo.App. 252, 175 S.W. 241(6); see Stumpe v. City of Washington, Mo.App., 54 S.W.2d 731, 733.

*vitum,* nevertheless the courts have adopted a rather liberal instead of a "frosty" attitude, and they do not search "as with a lighted candle" for technicalities, inadvertences, and minor defects, because they recognize that the more hazards of street contracting are enhanced "competition is stifled, and the price bid is swollen to the extent that the extra hazard is met with extra pay," and so the property owner suffers. Gist v. Rackliffe-Gibson Construction Co., 224 Mo. 369, 123 S.W. 921, 924.[3]

The second contention is that the tax bill is void because the city council was not legally in session at the adoption of Ordinance 1909 (April 24, 1950), which created the district for the purpose of street improvement and directed the preparation of specifications and estimates, and at the adoption of Ordinance 1913 (April 28, 1950), which adopted specifications and provided for the contract and issuance of tax bills. The evidence seems directed principally at the meeting of April 24.

Ordinance 82 of the City of Sikeston provides that regular meetings shall be held on the first Monday in each month, and that special meetings may be called by the mayor or council president, and in event of special meetings six-hour notice shall be given by oral or written notice, such notice to be served by the chief of police or assistant.

In this respect the minutes of the city council for April 3, 4, and 10 were identified by the city clerk, and from these minutes the witness *read* (only) the last sentences in respect to adjournment, viz.: "There being no further business, the council adjourned *until Wednesday, April 4, 1950, at 10 a. m.*" "There being no further business, the council adjourned *until Monday, April 10, 1950, at 7:30 p. m.*" "There being no further business, the city council adjourned *until Monday April 24, 1950, at 4:30 p. m.*" (Here Note: The minutes, other than the sentences above so

read, are not set forth in the transcript, neither do the originals or copies accompany it, so we are completely in the dark as to what such minutes show except as above.) Counsel for defendants-appellants, in offering such minute exhibits, stated the minutes showed the council was in regular session on April 3 and showed an adjournment order until April 5 (4?), and that in the minutes of April 10, 1950, the adjournment "until Monday, April 24, 1950, at 4:30 p. m." was written with "another typewriter obviously of pica type." Counsel asked the city clerk witness if "the language that I have read at the end of your adjournment order [was] written in the record with a different typewriter." Objection was made on the ground the record itself was the best evidence. After some colloquy and further objection, witness was asked *why* the record was written in that manner, and he responded that "when the meetings adjourned *most of the time* we had no idea of when we were going to call another meeting. The stenographer * * * left that blank and put in 'there being no further business, the council adjourned' and left that blank. If we called another meeting during the next two or three days, that was filled in * *. That was the *usual* procedure, Mr. Bailey."

"Q. Now, after the meeting of April 24 there was no notice of meeting? Was there a notice of meeting served by the city marshal or the chief of police? A. Ordinarily no.

* * * * * *

"Q. Was any notice served of this meeting, Mr. Barrett, of April 24? A. Nothing more than notice by telephone. That was the ordinary procedure."

But on cross-examination the witness stated that he could not say as "a positive, definite fact" that the council on April 10 did not adjourn to April 24; that in respect to what happened five years ago he did not

3. City Trust Co. v. Cunningham, 223 Mo. App. 896, 20 S.W.2d 930, 933; Stumpe v. City of Washington, Mo.App., 54 S.W.2d 731.

want to make a positive statement; that "the young lady" (stenographer) made the record, and *as far as he knew* the council did adjourn until April 24 as stated by the record.

■ Appellants contend there is no statutory or ordinance authority for *adjourned meetings*. We think such was not necessary. Under the general rule the adjourned meeting becomes and is an extension of the regular meeting.[4] As to whether the April 24 meeting was a proper *adjourned meeting:* We commence with the proposition that the tax bill made a prima facie case in favor of the respondent. The burden was on the defendants-appellants to prove invalidity.[5] *Assuming* for the moment the statements of the clerk were competent, we think they were not sufficient to overcome the presumption and thus tear down and destroy the written record of adjournment. The witness testified to what was done "most of the time" and as to what was "ordinarily" done, but when he got down to this particular meeting he said that the young lady made the record and as far as he actually knew the council did adjourn until April 24. If such speculative evidence could destroy their validity, then public records would indeed be as fragile as egg shells blown by every vagrant breeze.

■ But (and in addition) we think this evidence which attacks the written rec-

ord was incompetent. The minutes of the city council were the record of their official proceedings (Section 77.090). The acts of the body are expressed only through such records, and consequently such minutes are the best evidence of what they purport to represent.[6] In a collateral proceeding (as distinguished from a direct proceeding) such records cannot be disputed or destroyed by parol testimony.[7] True, parol evidence is permitted to support or fill in the minutes where the nature of the act mentioned by the minutes is not shown and the testimony fills in the gap by explaining what the act consisted of,[8] and to show the actual and factual occurrence which is only indicated by a bare conclusion of law set forth in the minutes.[9] And we do not overlook that it is indicated by some authority that the appearance of the record itself may give ground for attack by parol evidence.[10] But in any event we do not have such record either in the original or by copy before us, and we must assume that the lower court acted within his discretion and that the appearance of the record was not such as to excite serious doubts as to its existence as a true record.

■ Furthermore, and regardless of the parol evidence rule, we are of the opinion the defendants did not produce sufficient evidence to overcome the presumption and to show that the April 24 meeting did not have validity as a *special meet-*

4. 62 C.J.S. Municipal Corporations § 394, p. 752; McQuillin, Municipal Corporations, 3d Ed., vol. 4, sec. 13.39, p. 516; Dillon, Municipal Corporations, 5th Ed., vol. II, sec. 535, p. 867.

5. City of Maplewood, for Use and Benefit of Scott v. Meryl Realty & Investment Co., Mo.App., 27 S.W.2d 433; Williams v. Hybskmann, 311 Mo. 332, 278 S.W. 377; Brink v. Kansas City, 358 Mo. 845, 217 S.W.2d 507; Bridges Asphalt Co. v. Jacobsmeyer, 346 Mo. 609, 142 S.W.2d 641.

6. Highfill v. City of Independence, Mo., 189 S.W. 801, 804; Stewart v. City of Clinton, 79 Mo. 603; State ex rel. William R. Compton Co. v. Walter, 324 Mo. 290, 23 S.W.2d 167; State ex rel. Bark-

well v. Trimble, 309 Mo. 546, 274 S.W. 683.

7. 32 C.J.S. Evidence §§ 876, 879, pp. 804, 805; 63 C.J.S. Municipal Corporations § 1621b, pp. 1482–1483; 37 Am.Jur., Municipal Corporations, sec. 64, p. 677; see 98 A.L.R. 1231, annotation; Fulton v. City of Lockwood, Mo., 269 S.W.2d 1; State ex rel. William R. Compton Co. v. Walter, 324 Mo. 290, 23 S.W.2d 167, 171; see State ex rel. Marcum v. Sappington, Mo.App., 261 S.W.2d 385.

8. Watts v. Levee District No. 1, 164 Mo. App. 263, 145 S.W. 129, 135.

9. Bonsack & Pearce v. School Dist. of Marceline, 226 Mo.App. 1238, 49 S.W.2d 1085, 1087.

10. See 32 C.J.S. Evidence § 879, p. 805.

*ing.* It was shown that the meeting was held and there were minutes of such meeting. The general rule is that a special meeting is valid if (a) the council members had notice, or (b) they were all present at the meeting.[11] As to whether these things existed the best evidence of course was the record, and that record is not before us. In the absence of the record, correct and proper action on the part of the city officials in the discharge of their public duties is to be presumed.[12] The only evidence which casts doubt upon the notice is the testimony of the city clerk above quoted. Assuming this testimony was competent to overthrow the presumption of validity, we think the telephone notice could have been sufficient. The provision for the *manner* of notice is not a part of the city charter; it was made by ordinance. "If a statute merely requires certain things to be done and nowhere prescribes the result that shall follow if such things are not done, then the statute should be held to be directory. The rule thus stated is in harmony with that other well-recognized canon that statutes directing the mode of proceeding by public officers are to be held directory and are not to be regarded as essential to the validity of a proceeding unless it be so declared by the law." State ex inf. McAllister ex rel. Lincoln v. Bird, 295 Mo. 344, 244 S.W. 938, 939. Certainly if all the members of the city council got notice via telephone instead of via chief of police the purpose of the ordinance

provision was attained by substantial compliance.[13]

As to whether all the members actually attended the meeting, presumably the minutes of that meeting would have shown, but in their absence we must presume that all members were present and the meeting was valid.[11(b)] One case, Mayor, Councilmen and Citizens of City of Glasgow v. Morrison-Fuller, 142 Mo. App. 303, 126 S.W. 236, seems to cast some doubt upon the statements we have just made, but in that case the city charter itself provided the method by which the meetings should have been convened, and no additional method had been provided. We are unable to find where such case has ever been cited as authority. We think it is not controlling in the instant case.

The only assignment which we regard as serious in point of error is the refusal of the court to accept certain testimony concerning nonperformance of the work. Defendants had pleaded specifically failure of the contractor to actually do the work. Furthermore, they pleaded fraud and conspiracy between the contractor and the city officials in respect to such. There seems to be a conflict as to whether acceptance of an improvement by the proper municipal authorities is conclusive evidence, at least as against the city, that the work was performed,[14] but the Missouri

11. Dillon, Municipal Corporations, 5th Ed., vol. II, sec. 534, p. 8666; McQuillin, Municipal Corporations, 3d Ed., vol. 4, sec. 13.08, p. 450; 37 Am.Jur., Municipal Corporations, sec. 56, p. 671; 62 C.J.S. Municipal Corporations § 397, p. 756, § 397b, p. 754; Aurora Water Co. v. City of Aurora, 129 Mo. 540, 31 S.W. 946, 955.
  (b) City Trust Co. v. Crockett, 309 Mo. 683, 274 S.W. 802; Rutherford v. Hamilton, 97 Mo. 543, 11 S.W. 249; see Parker-Washington Co. v. Field, 202 Mo. App. 159, 214 S.W. 402, 404.

12. 43 Am.Jur., Public Officers, sec. 511, p. 254; 31 C.J.S. Evidence § 146, p. 798 et seq.; Waters v. School Dist. No.

4, 59 Mo.App. 580; Deming v. City of Springfield, Mo.App., 224 S.W. 1004; State ex rel. Kersey v. Sims, Mo.App., 286 S.W. 832, 835; Gilbert v. Malan, 231 Mo.App. 469, 100 S.W.2d 606; State ex rel. Fahrman v. Ross, 160 Mo.App. 682, 143 S.W. 502(15); Glaze v. Glaze, Mo. App., 311 S.W.2d 575, 576.

13. 62 C.J.S. Municipal Corporations § 397b(2), p. 754; see Cushing v. Hartwig, 138 Mo.App. 114, 120 S.W. 109, 110; see Hinerman v. Williams, 205 Mo.App. 364, 224 S.W. 1017.

14. 63 C.J.S. Municipal Corporations § 1191, p. 902.

rule for a long time has been "* * * since the burden to pay rests upon them [the property owners] they have a right to insist upon a faithful performance of the contract and the corporate authorities cannot dispense with such performance." McQuiddy v. Brannock, 70 Mo.App. 535, 541.[15] And even though the improvement has been accepted by the city, failure of substantial performance (but only a substantial performance) within the terms of the contract, if established, will render the tax bill invalid.[16]

The ordinance adopted specifications which required that the streets be graded "and then rolled with an eight-ton roller to the satisfaction of said city representative," and that liquid asphalt be applied thereafter; it provided for the improvement to be made in accordance with such specifications; and the contract provided that the streets should be graded, rolled, and oiled in accordance with such specifications.

Witness Harrison, who acted as city engineer for a portion of the time during the process of this improvement, testified that during his tenure he "accepted" some streets; that he made the contractor go over some streets; and

"Q. Did you have any conference with him [the contractor] relative to noncompliance that he didn't complete? A. Yes, sir. I had some conferences with him on that."

The witness stated he did not know whether the contractor did the street over or not. The witness then explained how a street would "look" which had been oiled in accordance with specifications, and

"Q. If it was properly oiled how long would it have stayed that way? A. Well, it was supposed to keep down the dust through the dusty weather, the summer, and I would say you should see traces of it next spring of the next year."

The witness said he did not make the engineer's report which has been heretofore mentioned; that he was not the city engineer during all of the improvement.

Witness Ables testified that he was street commissioner; that his job was to get the streets ready for the improvement; that he was on the job every day "looking and seeing the oiling going on, but—staying with them putting it on, I did not." This witness was not familiar with the plans and specifications. He was asked if the streets were rolled before any oil was put on. Objection was made on the ground that the witness was not familiar with the plans and specifications. This objection was sustained. Defendants then offered to prove that none of the streets were ever rolled before the oil was put on. The witness volunteered, before ruling, that he did not recall *any* streets being rolled at all; but the court then sustained objection to the offer. Defendants then attempted to show what one street (Murray Lane) "looked like" after the oil was applied and offered to prove that the improvement did not last a season; that in some instances it did not last as much as two weeks, "and it had to be graded down, all of it, in thirty days"; and there was no "penetration" as provided by the specifications. All these offers were refused for the stated reason the witness was not familiar with the specifications.

15. Heman v. Gerardi, 96 Mo.App. 231, 69 S.W. 1069; Coulter v. Phoenix Brick & Construction Co., 131 Mo.App. 230, 110 S.W. 655.

16. Town of Carrollton, to Use of Hanchett Bond Co. v. Tonnar, Mo.App., 28 S.W.2d 443; Trimble v. Stewart, 168 Mo.App. 276, 153 S.W. 1086; City Trust Co. v. Cunningham, Mo.App., 7 S.W. 2d 456; see Hydraulic Press Brick Co. v. Nickell, Mo.App., 221 S.W. 815; see City of Webster Groves, to Use of Lafayette South Side Bank v. Reber, Mo. App., 226 S.W. 77.

We think the exclusion of this evidence too narrowly limited defendants in presentation of their evidence. They had the right to show that the work contracted for was not substantially performed. It was not a question of whether the witness was familiar with the specifications; rather it was a question of whether the work was performed. The witness testified he was present every day and saw the work being carried forward. If he knew none of the streets were rolled, he was competent to testify as to such fact. Also we think that the appearance of the street immediately after the purported oiling was competent in view of the testimony of the engineer as to how it should look if the work were done to specifications.

As to whether the rolling of the streets was an essential or substantial part of the improvement, the evidence does not qualify us to say. There had been some evidence that the improvement did not last through the time which the city engineer said it would, if done according to specifications. It may, or may not, be that the rolling with an eight-ton roller was necessary in order to secure the adhesion and penetration of the oil and thus secure the results expected to be attained, and if so we can see why this requirement in the specifications and contract would be an essential element. There simply is not enough evidence in the record for us to judge this fact.

It is true that the specifications provide that the streets shall be rolled with an eight-ton roller "to the satisfaction of said city representative," but if *no* streets were rolled *at all*, and no explanation is made of the reason therefor, it could hardly be said that they were "rolled to the satisfaction" of anyone.

We think the rulings of the court limited the defendants too strictly in their attempt to prove nonperformance and that the case must be reversed and remanded, and that the defendants should be permitted to show, if they can, that the improvement specified and contracted for was not substantially performed. However, in so reversing and remanding the case we suggest that any failure of performance in order to relieve the defendants must be material and substantial. Section 88.643 is a statute which provides a quick and inexpensive method of oiling the streets with fewer technical requirements than are provided in other procedures for more substantial improvements. The cost of this particular improvement was calculated and assessed at 16 cents per linear foot on abutting property. At that price the property owners could not expect to receive gold plate.

The case is reversed and remanded for retrial.

STONE, P. J., and McDOWELL, J., concur.